UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Rome

JAN 3 0 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

A BETTER PLUMBING SERVICE,
INC.,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

CIVIL ACTION

NO. 1:07-CV-0279-RLV

O R D E R

This is a tax refund case in which the plaintiff seeks a refund of $27,668.89 in penalties paid to the United States for failure to timely file and pay employment tax returns. Pending before the court is a Motion for Summary Judgment [Doc. No. 17] by the United States of America ("the Government"). For the foregoing reasons, the Government's motion is GRANTED.

**FACTUAL BACKGROUND**

A Better Plumbing Service, Inc. ("ABP") is a small plumbing services company located in Conyers, Georgia. ABP is owned and operated by J.R. "Rick" Ingram, President and sole shareholder of the corporation. Although Ingram started out as ABP's only employee, the business expanded and Ingram hired additional employees.

Throughout ABP's history, Ingram has hired outside professionals to perform ABP's bookkeeping and pay its employer and payroll taxes. In 2001, Ingram hired Suzanne Baker to handle ABP's accounting, bookkeeping, and taxes, which she previously had been doing for ABP's outside accounting firm. Baker's duties included filing ABP's payroll tax returns and paying any taxes owed. In addition, she had authority to write checks on ABP's behalf.

In the beginning, Ingram reviewed and signed the tax returns that Baker had prepared, and Baker made several payroll tax deposits to the Internal Revenue Service ("IRS"). While Ingram initially spent many hours working at ABP's office when Baker began her employment, he eventually gained confidence in Baker's ability to handle the business's financial matters on her own and, as a result, spent less and less time at the office. Accordingly, the day-to-day business operations and management decisions were left to Baker. Nevertheless, Ingram never completely removed himself from the management of the business, and he maintained telephone contact with Baker as much as twelve times a day to discuss non-tax related business affairs.

In 2002, ABP's cash flow slowed, and Baker paid late ABP's payroll tax deposits due to a lack of funds when "business was

2

slow." It was during this period that Baker began embezzling funds from ABP.

Over the course of the next year-and-a-half, Baker stole more than $70,000 from ABP to pay for her $300 a day prescription drug habit. She funded her drug addiction by not filing ABP's payroll tax returns (Forms 940 and 941), not making its payroll tax deposits, and not paying ABP's outstanding tax liability. Baker chose to pay ABP's suppliers in lieu of other debts so that ABP could continue to operate and pay its employees as it had been. Baker never communicated to Ingram that ABP did not have enough money to pay its taxes, and Ingram never inquired into whether ABP was complying with its tax obligations. When Ingram discovered Baker's embezzlement, he confronted her. Baker confessed to the embezzlement and also informed Ingram that she had not been paying ABP's taxes.

Subsequently, Ingram hired an accountant to perform an audit of ABP's books and determine the extent of Baker's theft. It was discovered that Baker wrote checks to herself and others drawn on ABP's account, opened up additional credit card accounts without Ingram's knowledge, and falsified computer accounting entries to pay for and cover up her wrongdoing. Notably, Ingram admits that he never reviewed ABP's books or otherwise asked for an accounting

3

of ABP's financial condition from Baker.  Ingram also never asked Baker if she was paying ABP's taxes, and he admits to never signing any tax returns during the relevant period.  At the completion of the audit, Ingram's new accountant filed late ABP's 940 and 941 tax returns and paid its outstanding tax liabilities totaling $145,313.27.

Upon receiving ABP's untimely 940 and 941 tax returns and payments, the IRS assessed penalties and interest under 26 U.S.C. §§ 6651(a)(1), 6651(a)(2), and 6656.  ABP protested and pursued its administrative remedies, which were denied.  After Ingram paid $27,668.89 in penalties, ABP filed this action under 26 U.S.C. § 7422 for a refund of the penalty assessment.  The Government has filed its summary judgment motion on the ground that ABP cannot establish reasonable cause for its late filings and payments, and thus is not entitled to a refund.

## MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

4

(1986).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof.   Id. at 322-23.   Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"   Id. at 324.   Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   Id. at 322.

26 U.S.C. §§ 3102(a), 3402(a), and 7501, require an employer to deduct and withhold income and social security taxes from employee wages and to hold these taxes as a special trust fund for the benefit of the United States.   ABP admits to not paying these taxes or filing the required returns (Forms 940(yearly) and 941(quarterly)) for the taxable quarters ending March 31, 2002, through September 31, 2004, and taxable years ending December 31, 2002, through December 31, 2004.   Under 26 U.S.C. §§6651(a)(1),

6651(a)(2), and 6656, a taxpayer who fails to file the required returns, pay taxes due in a timely manner, or deposit the appropriate amount into the government's trust account is subject to financial penalties unless such failure is "due to reasonable cause and not due to willful neglect."     E.g., 26 U.S.C. § 6651(a)(1).

In United States v. Boyle, 469 U.S. 241, 245 (1985), the Supreme Court set forth a bright-line rule for the enforcement of tax regulations and explained that to qualify for a refund of penalties, "the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'"  The Government does not contend that ABP's failure was from willful neglect. Instead, the Government moves for summary judgement only on the assertion that ABP cannot meet its burden of proving that its failure to file returns, pay taxes, and make the appropriate deposits was due to reasonable cause.  The facts outlined above are not in dispute and present no genuine issue of material fact regarding reasonable cause.  Thus, the only issue before the court is whether ABP has made a showing sufficient to establish that its failures were due to "reasonable cause."

6

Although the term "reasonable cause" is not defined in the Code, "the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" Boyle, 469 U.S. at 246 (quoting 26 C.F.R. § 301.6651-1(c)(1)).   The Regulation further elaborates that a taxpayer's failure will be excused for reasonable cause where "the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless unable to pay the tax or would suffer an undue hardship . . . if he paid the tax on time." § 301.6651-1(c)(1). Accordingly, "reasonable cause" can be shown if the following factors are met: the taxpayer exercises "ordinary care," and (1) the taxpayer was nevertheless "unable to comply" with tax obligations, or (2) the taxpayer would have suffered an "undue hardship" by paying the tax.

Notably, the issue of refunding employer tax penalties has been addressed in this circuit only once since Boyle, and the discussion is inapplicable to the analysis here.  In In re Sanford, 979 F.2d 1511 (11th Cir. 1992), the Eleventh Circuit considered whether penalties assessed under §§ 6651(a)(1), 6651(a)(2), and 6654 could be partially allowed.  The court held that tax penalties

7

had to be allowed in full or denied in full, and remanded with instructions for the trial court to determine whether the taxpayer had made the requisite showing to qualify for a waiver of the penalties, i.e., whether the taxpayer's failure was "due to reasonable cause and not to willful neglect." In re Sanford, 979 F.2d at 1515. Because the Eleventh Circuit did not address the issue of whether the taxpayer in that case established reasonable cause, only that any penalties assessed had to be all or nothing, In re Sanford is not instructive for determining whether the facts in this matter constitute reasonable cause. Consequently, this court will look to cases in other circuits.

Before doing so, however, this court will address two extraneous arguments presented by ABP. First, despite the Government's admission that it is not asserting "willful neglect" on the part of ABP (the second element required to qualify for a refund, see, e.g., §6651(a)(1)(a failure is excused if it is "due to reasonable cause and not due to willful neglect.")), ABP nevertheless makes a "willful neglect" argument. For support, ABP cites East Wind Ind. Inc. v. United States, 196 F.3d 499 (3d Cir. 1999), a case where the taxpayer-corporation itself participated in a bribery scheme with its only client (a government agency) but nevertheless established reasonable cause for failing to file and

8

pay tax deposits because its client improperly refused to pay, leaving the taxpayer at the client's mercy to have enough cash to operate the business and pay its taxes.  The court concluded that East Wind's conduct did not amount to willful neglect and it would have suffered an undue hardship, such as going out of business, if it had timely paid its taxes.  Id. at 509-10.  However, because the Government in this matter concedes the "willful neglect" prong of the penalty waiver requirement, ABP's foray into this area is immaterial to the issue before the court.

Second, to the extent that ABP relies on East Wind to interject an assertion that paying its taxes here would have caused an "undue hardship," see § 301.6651-1(c)(1) (reasonable cause can be shown if the taxpayer exercised ordinary business care and was nevertheless unable to pay or doing so would have caused undue hardship), that argument is unavailing because ABP has pointed to no evidence that would support such a finding.

For example, in Staff IT, Inc. v. United States, 482 F.3d 792 (5th Cir. 2007), the court rejected a claim for refund because, even when considering all the facts and circumstances,[1] the

_____

[1]The court acknowledged that of the Circuit Courts of Appeals that have taken up the issue, a majority (Second, Third, Seventh, and Ninth) have adopted a broader facts-and-circumstances test in the "undue hardship" analysis and have rejected the narrow, bright-

taxpayer had continued to pay its creditors, employees, and operating expenses while not paying its payroll tax obligations. The court noted the fact that Staff IT had taken no measure to reduce its expenses and, despite experiencing financial difficulties, consciously had chosen to pay nearly all its creditors and its office-shareholders ahead of its tax obligations. The court reasoned that a penalty was appropriate and that Staff IT would not have suffered an undue hardship because paying money to other creditors in lieu of holding it as payroll taxes in trust for the government constituted an unauthorized government loan of those funds, which clearly does not justify waiving the penalties imposed for such action.  Id. at 801-02; see also Diamond Plating Co. v. United States, 390 F.3d 1035, 1039 (7th Cir. 2004)(favoring creditors and employees over the government severely undermines argument about undue hardship).

Here, ABP also chose to pay its creditors over the government. The reason it did was so that Baker would have funds available to

---

line rule adopted by the Sixth Circuit that financial difficulty can never constitute reasonable cause.  Without deciding which test the Fifth Circuit would adopt, the court in Staff IT concluded that even under the more discretionary facts-and-circumstances test the taxpayer's abatement claim failed.  Similarly, this court examines ABP's arguments through the more lenient standard without specifically adopting either test.

embezzle.   She apparently decided to maintain ABP's payments to creditors in lieu of the government so as to not raise suspicion and conceal her theft. There is no evidence showing that the money ABP would have used to pay its taxes was instead used to maintain the company's viability.   Rather, the facts tend merely to show that Baker stole ABP's money to finance her drug addiction and that she arranged to have ABP pay its creditors instead of the government, not to keep the company afloat, but to hide her crimes.

In East Wind, 196 F.3d at 509, the court found that taxpayer-corporation had established an undue burden because the evidence showed that it had taken extensive steps to limit its costs, such as reducing staff and paying only essential creditors, but still would have had insufficient funds to remain a viable business.   In this case, when read in a light most favorable to ABP, the evidence shows that ABP did not have enough money to pay its tax obligations due to Baker's embezzlment.   However, that is not enough to establish that ABP would have suffered an undue burden if it had paid its taxes.   The mere fact that APB may not have had enough money to both pay its creditors and the government does not necessarily mean it would have suffered an undue burden by paying its taxes, especially when it favored its creditors over the government.   Moreover, there is nothing showing that after taking

substantial steps to reduce its costs ABP would not have had enough money to pay its taxes and still remain viable.  Consequently, ABP cannot establish that it would have suffered an undue burden if it had timely paid its taxes.

The court now returns to whether ABP has made a showing sufficient to establish that its failures were due to "reasonable cause."  Since the court has concluded that the facts do not support a finding of undue hardship, the issue in this case, more precisely defined, is whether ABP can establish "reasonable cause" by showing that it (1) exercised ordinary business care and (2) was nevertheless unable to comply with its tax obligations.  The court first addresses the second prong of this analysis: whether ABP satisfies the "unable to comply" requirement.

Any analysis in this regard must begin with <u>United States v. Boyle</u>, 469 U.S. 241 (1985).  In    <u>Boyle</u>, the taxpayer had been appointed executor of his mother's estate and he hired an attorney to file the necessary estate tax returns.  Due to the attorney's error, however, the estate taxes were not paid on time and the IRS assessed the appropriate penalty on Boyle pursuant to § 6651(a)(1).  Boyle then sought a refund of his penalty arguing that he had relied on his attorney and thus any failure to file was due to "reasonable cause" because his attorney's error rendered him

"unable to comply" with his tax obligations.  Considering whether reliance on an attorney could support a finding of "reasonable cause," the Supreme Court rejected the taxpayer's argument and established a bright-line rule holding that "failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing."  <u>Boyle</u>, 469 U.S. at 252.  Significantly, just as the question before the Court in <u>Boyle</u> was whether reliance on an agent can support a finding of reasonable cause, this court is similarly presented with the issue of whether a corporation's reliance on its agent can establish reasonable cause.[2]

The Government asserts that because ABP's only argument is that its late filings and payments resulted from Ingram's reliance on Baker, it cannot establish reasonable cause in light of <u>Boyle</u>'s bright-line rule rejecting reliance on an agent as grounds for establishing reasonable cause.  Without attempting to distinguish itself from <u>Boyle</u> and instead relying on the single Circuit Court opinion that has found reasonable cause notwithstanding <u>Boyle</u>'s no-reliance rule, <u>In re American Biomaterials Corp.</u>, 954 F.2d 919 (3d

---

[2]Although ABP does not dispute this point, the court notes that while <u>Boyle</u> involved an individual taxpayer, corporations are nevertheless equally subject to its rule.  <u>Atlas Therapy, Inc. v. United States</u>, 66 F. Supp. 2d 1203, 1207 (N.D. Ala. 1999).

Cir. 1992), ABP contends that it was rendered "unable to comply" with its duties due to Baker's malfeasance. In particular, ABP argues that its president, Ingram, could not have foreseen Baker's embezzlement or her failure to perform her express duty to ensure ABP met its tax obligations. As a result, ABP was unable to comply with its tax obligations since Ingram had delegated that duty to Baker and believed that she was complying. Thus, the sole question to be resolved is whether ABP's misplaced reliance on Baker can satisfy the "unable to comply" requirement.

To be sure, applying <u>Boyle</u>'s rule in the corporate context has challenged many courts presented with a factual scenario nearly indistinguishable from the instant case. See <u>Atlas Therapy, Inc.</u> <u>v. United States</u>, 66 F. Supp. 2d 1203, 1207 (N.D. Ala. 1999)(summarizing circuit and trial court cases). In particular, the Sixth, Ninth, and Third Circuit Courts of Appeals have examined whether a key financial employee's failure to carry out his responsibility to ensure a corporation's tax obligations are met and his concealment of the failure can excuse a corporation's failure to comply with its tax obligations. <u>Id.</u> (citing <u>Valen Mfg.</u> <u>Co. v. United States</u>, 90 F.3d 1190 (6th Cir. 1996); <u>Conklin Bro. of</u> <u>Santa Rosa, Inc. v. United States</u>, 986 F.2d 315 (9th Cir. 1993); <u>In re American Biomaterials Corp.</u>, 954 F.2d 919 (3d Cir. 1992)).

14

Importantly, of all the cases that have considered whether a taxpayer has satisfied its "heavy burden" in light of Boyle, only one has found that abatement of the penalty was warranted.

In In re American Biomaterials, 954 F.2d 919, the case relied upon by ABP, the Third Circuit considered whether a corporation was excused for its failure to file and pay its taxes due to the embezzlement and failures of the only corporate officers with responsibility to carry out American's tax filings.   While acknowledging Boyle's general rule that reliance on an agent cannot support a finding of reasonable cause, the court instead looked to Boyle's "disability" exception.  This exception, as announced by the Supreme Court, excuses a taxpayer's failures if they are due to circumstances beyond the taxpayer's control.  It is limited to situations where the actions of a taxpayer's agent renders the taxpayer itself objectively incapable of meeting its obligations, i.e. an agent causes a taxpayer's "disability." Boyle, 469 U.S. at 248-49 n.6.

Notably, however, there is a distinction between the effect of a taxpayer's "disability" to file and the effect of a taxpayer's "reliance" on an agent to perform the taxpayer's obligations.  Id. The disability exception applies where the corporation is rendered incapable of exercising ordinary business care--the first prong of

15

the reasonable cause analysis--due to the acts of its employees, not where the corporation is actually capable of exercising ordinary business care but nevertheless is unable to comply because of reliance on an agent.  Id.; see In re American Biomaterials, 954 F.2d at 923.  If a corporation is rendered incapable under this narrow exception, such a disability may be sufficient to show reasonable cause.  Boyle, 469 U.S. at 248-49 n.6.  In American Biomaterials, the Third Circuit concluded that the wrongdoing of the only people able to act for the corporation "incapacitated" the corporation and therefore rendered American "disabled" from complying with it tax obligations.   In re American Biomaterials Corp., 954 F.2d at 921, 927.

American Biomaterials is distinguishable from this case, however, because it examined whether American was "disabled" from complying and not whether its "reliance" on its agents rendered it "unable to comply" with its tax obligations.  Here, although ABP makes oblique references to its "disability" while citing to American Biomaterials, it does not expressly contend that it was incapacitated from exercising ordinary business care.  Rather, it generally asserts a "reliance" argument, that despite having exercised ordinary business care it was nevertheless unable to comply with its tax obligations due to its reliance on Baker.

16

Thus, ABP's apparent position is that it satisfies the reasonable cause standard (exercising ordinary business care but unable to comply) rather than the disability exception.  But as the Court in Boyle announced, the disability exception is proper only where the taxpayer is rendered incapable of exercising ordinary business care.  Boyle, 469 U.S. at 248-49 n.6.  Because, ABP asserts that it did exercise ordinary business, the reasoning in American Biomaterials is inapplicable and the rule announced in Boyle precludes a finding of reasonable cause based on ABP's reliance on its agent.

Even if the court assumes in the alternative that ABP has put forth that it was disabled from timely complying and thereby can establish reasonable cause under the exception to Boyle's bright-line, no-reliance rule, there is an additional reason why that argument must fail: ABP makes no showing that it lacked any control over Baker.  In determining how courts have applied Boyle in the corporate context, this court has looked at Valen Mfg. Co. v. United States, 90 F.3d 1190 (6th Cir. 1996), and Conklin Bro. of Santa Rosa, Inc. v. United States, 986 F.2d 315 (9th Cir. 1993).

In Valen Manufacturing, the taxpayer-corporation failed to file returns and pay its tax obligations when its trusted bookkeeper failed to execute her duties regarding the corporation's

17

employment taxes and then covered up her wrongdoing.  Valen
Manufacturing argued that it had established reasonable cause and
should be excused from paying penalties because it had exercised
ordinary business care in hiring a trusted bookkeeper.  It also
argued that its agent's actions "disabled" it from complying.  Thus
Valen Manufacturing sought a waiver of its penalty asserting both
a "reasonable cause" argument and the "disability" exception.
However, the Sixth Circuit concluded that <u>Boyle</u>'s no-reliance rule
foreclosed any finding of reasonable cause based on Valen
Manufacturing's reliance on its agent.  The court also determined
that the disability exception did not apply because Valen
Manufacturing had retained control over its employee.

In <u>Conklin Brothers</u>, the taxpayer-corporation similarly relied
on its controller to ensure compliance with its tax obligations.
However, the controller failed to timely make the filings and
deposits, and she concealed her wrongdoing.  Conklin Brothers
asserted that it had exercised ordinary business care in relying on
a trusted employee but had nevertheless been rendered unable to
comply because of the employee's misconduct.  It also asserted that
its employee's misconduct had rendered it "disabled" from
complying.  Relying heavily on <u>Boyle</u>'s no-reliance rule, the Ninth
Circuit concluded that Conklin Brothers' reliance on its employee

was insufficient to establish that it had been unable to comply with its tax obligations.   It further determined that the disability exception to Boyle's rule did not apply because the employee's conduct was not beyond Conklin's control.

After rejecting the taxpayers' arguments that their reliance on employees could satisfy the "unable to comply" requirement because of Boyle's bright-line rule foreclosing a waiver of penalty based on a taxpayer's reliance on an agent, the courts in Conklin Brothers and Valen Manufacturing distinguished their "disabled" claim from that in American Biomaterials on the ground that Conklin Brothers and Valen Manufacturing had been able to exercise control over their employees.   E.g., Conklin Bro. of Santa Rosa, 986 F.2d at 318 ("A corporation acts only through its agents and employees, and it is clear after *Boyle* that it cannot *rely* upon those agents or employees . . . to escape responsibility for the nonperformance of nondelegable duties.").   Whereas the corporate officers who embezzled and failed to ensure American Biomaterials' tax compliance were the very people who exercised control over the corporation itself, the employees of Conklin Brothers and Valen Manufacturing were not at the top of their corporate structure and were not the only ones able to act for their respective employers. Conklin Bro. of Santa Rosa, 986 F.2d at 318 ("Here, unlike in

_Biomaterials_, Stornetta's deficient and improper conduct was not largely beyond Conklin's control. In _Biomaterials_, the . . . [wrongdoing] committed by the corporate officers and the Chairman of the Board of Directors was beyond the corporation's control because they were the control people in the corporate structure."); _Valen Mfg. Co._, 90 F.3d at 1194 (distinguishing _In re American Biomaterials_ "[b]ecause the criminal actors in that case, the corporation's CEO and Chairman of the Board and its CFO treasurer, were the very two individuals with ultimate control over the company's taxpaying activities.")

The same distinction is present in the instant case. In _American Biomaterials_, American's failures were due to the actions of the only individuals ultimately responsible for American's tax obligations. In this action, however, while Baker was similarly responsible for ensuring ABP complied with its tax obligations, she was not the only person capable of acting for ABP in this regard. Indeed, ABP maintains that at all times Ingram owned and operated ABP as the President and sole shareholder. He hired employees, and, although he eventually spent less and less time at the office, he remained in contact with Baker and talked with her via telephone as much as twelve times a day. In contrast to the corporate officers in _American Biomaterials_ who retained ultimate control

20

over the corporation and were the only persons who could act for the corporation, Baker was expected to report to Ingram if ABP could not pay its tax obligations, and it was Ingram who ultimately satisfied his company's tax obligations.

Persuaded by the reasoning in Valen Manufacturing and Conklin Brothers as those cases applied Boyle and its "disability" exception, this court concludes that a corporation's ability to control its agent is the key to determining whether it is disabled from timely complying with its tax obligations. See Atlas Therapy, Inc. v. United States, 66 F. Supp. 2d at 1208-09. Because ABP cannot establish that it lacked control over its agent, such as is the situation when the agent is the person in control of the corporation and supervision over such an individual is not possible, the disability exception to Boyle's no-reliance rule is inapplicable in this case.

In view of Boyle's bright-line rule, and its subsequent application in the corporate context in Valen Manufacturing and Conklin Brothers, this court rejects ABP's assertion that it should be excused from paying penalties because of its misplaced reliance on Baker. While ABP admits that Ingram was aware an employer has tax obligations with respect to its employees, much of ABP's argument focuses on Ingram's lack of knowledge about specific

corporate tax obligations and the forms required to comply with those obligations. In essence, ABP contends that because Ingram was unsophisticated, it delegated the responsibility to comply with its tax obligations to Baker and reasonably relied on her to follow through. According to ABP, that reliance, albeit mistaken, should excuse it from paying penalties because Baker's wrongdoing rendered ABP "unable to comply" with its tax obligations despite having exercised ordinary business care in the delegation of its tax responsibilities. However, Boyle requires this court to conclude that ABP's reliance on an agent cannot satisfy the "unable to comply" prong of the reasonable cause analysis. Accordingly, this court holds that ABP cannot establish that it was unable to comply with its tax obligations and, therefore, cannot establish that it had reasonable cause for its late filings.

The responsibility to timely file and pay taxes is the taxpayer's burden to bear alone. The Government necessarily enforces our system of self-assessment of taxes through strict filing standards. Boyle, 469 U.S. at 249. As the Supreme Court noted, "[t]he duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." Id. at 249-50. A taxpayer's reliance on his agent to

22

ensure tax obligations are met may be reasonable, but such reliance does not relieve the taxpayer of his ultimate duty under the tax code.  Id. at 250.  The fact that Ingram may have lacked sophisticated business training or, for that matter, any particular knowledge about ABP's tax obligations, does not serve to lessen or excuse ABP's duty to timely pay its taxes.  Id. at 252 (finding that such duty "requires no special training or effort to ascertain a deadline and make sure that it is met.").

ABP's contention that it should be excused for its failures because of the misconduct of its agent attempts to create an exception for corporations that are deceived by employees. However, such an exception would not be consistent with Boyle's broad scope and bright-line rule that reliance on an agent does not alleviate a taxpayer's ultimate responsibility.  In other words, while ABP can delegate its *authority* to file and pay its taxes, it cannot delegate its *responsibility* to do so.  A taxpayer is ultimately responsible for complying with the tax code regardless of how the taxpayer chooses to satisfy that duty.  As the Government points out, if an employer's mistaken reliance on an agent were enough to excuse its failure to comply with tax obligations, then such a rule would not only run contrary to Boyle, but it would permit an unworkable situation, wherein corporations

23

would be encouraged to remain ignorant of tax obligations so that they could benefit (by way of avoiding late filing and payment penalties) from lax internal controls and oversight.

Because this court concludes that ABP cannot establish the "unable to comply" prong of the "reasonable cause" analysis, it is unnecessary for the court to determine whether the hiring of Baker and charging her with ensuring ABP met its tax obligations constituted ordinary business care.  This court also concludes that the "disability" exception to Boyle's rule is applicable here.  In any event, ABP cannot show that its failures were due to reasonable cause.  Therefore, ABP is not entitled to abatement of its penalties.

**CONCLUSION**

For the foregoing reasons, the Government's Motion for Summary Judgment [Doc. No. 17] is GRANTED.

SO ORDERED, this _30th_ day of January, 2008.

ROBERT L. VINING, JR.
Senior United States District Judge

24